Tammy Hussin, Esq. (SBN 155290)
HUSSIN LAW FIRM
1596 N. Coast Hwy 101
Encinitas, CA 92024
Tel. 877.677.5397
Fax 877.667.1547
Tammy@HussinLaw.com

James A. Francis (*Pro Hac Vice forthcoming)*
Lauren KW Brennan (*Pro Hac Vice forthcoming*)
FRANCIS MAILMAN SOUMILAS, PC
1600 Market St., Suite 2510
Philadelphia, PA 19103
Tel. 215.735.8600
Fax 215.940.8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Attorneys for Plaintiff,
WILLIAM NORMAN BROOKS, III

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| WILLIAM NORMAN BROOKS, III, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br><br>vs.<br><br>LUNDQUIST CONSULTING, INC.,<br><br>Defendant. | Case No.: 4:22-cv-01916-JST<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br>Fair Credit Reporting Act<br>California Consumer Credit Reporting Agencies Act<br>Defamation<br>Cal. Bus & Prof. Code § 17200<br><br>JURY TRIAL DEMANDED |

Plaintiff, William Norman Brooks, III, by undersigned counsel, alleges as follows:

**INTRODUCTION**

1. This is a consumer class action brought for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.* ("CCRAA") against Defendant Lundquist Consulting, Inc. ("LCI") in connection with its sale of inaccurate bankruptcy records to third parties. LCI deprives consumers of the rights under the FCRA by failing to comply with the law and refusing to adopt procedures to assure the maximum possible accuracy of the bankruptcy records it prepares and sells about individual consumers, and failure to provide consumers with file disclosures upon request.

2. Specifically, this case deals with LCI's practices for preparing and selling to banks and other third parties records of the filing of bankruptcy proceedings, and/or updates regarding existing bankruptcy proceeding. These records attribute such bankruptcy records to individual consumers without using all of the available personal identifying information available on the public record, including full social security numbers, middle names, and generational suffixes. As a result of this matching logic, LCI prepares and delivers reports about many consumers, including Plaintiff, which inaccuracately attribute a bankruptcy record to an unrelated consumer.

3. LCI compounds these errors by routinely failing to respond to consumer requests for information, hindering consumers' ability to review and dispute inaccurate information and prevent future inaccurate reports from being sold in the future.

4. To the extent Defendant asserts that it is not a consumer reporting agency within the meaning of the FCRA or a consumer credit reporting agency within the meaning the CCRAA, Plaintiff asserts in the alternative to his FCRA and

CCRAA claims that Defendant's practices discussed herein constitute defamation within the meaning of California law, and are unlawful, unfair, or fraudulent business practices under California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.* ("UCL").

5. Defendant's practices harm consumers by prejudicing their prospective creditors which inaccurate, adverse information stating that the individual has filed for bankruptcy when they in fact have not.

## JURISDICTION

6. The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, § 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." This case does not include any statutory claims which would grant exclusive jurisdiction to any other trial court in California.

7. The California Superior Court has jurisdiction over the Defendant named herein because, based on information and belief, the Defendant is a corporation or association authorized to do business in California and registered with the California Secretary of State, or does sufficient business, has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market through the promotion, sale, marketing and/or distribution of goods and services in California and thereby having such other contacts with California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

8. On March 28, 2022, Defendant removed this matter, originally filed in California Superior Court, to this Court, asserting that federal jurisdiction is proper. ECF 1.

**DIVISIONAL ASSIGNMENT**

9. Venue is proper in the San Mateo County Superior Court pursuant to California Code of Civil Procedure section 395.5 because Defendant LCI is a business located in San Mateo County, and the obligation or liability arises in the County of San Mateo and/or the breach occurred in the County of San Mateo.

10. Pursuant to Civil L.R. 3-2, assignment to the Oakland Division is proper following removal because Defendant LCI is located in San Mateo County.

**THE PARTIES**

11. Plaintiff, William Norman Brooks, III, is an adult individual residing in San Diego County, California.

12. Defendant Lundquist Consulting, Inc. ("LCI") has a principal place of business at 111 Anza Boulevard Suite 310, Burlingame, CA 94010, and conducts business within this judicial district and throughout the State of California.

13. LCI a consumer reporting agency within the meaning of 15 U.S.C 1681a(f) and a consumer credit reporting agency within the meaning of CCRAA § 1785.3(d) because it regularly and the ordinary course of business assembles consumer information for the purposes of furnishing consumer reports to third parties in exchange for a fee.

14. The causes of action herein also pertain to Plaintiff's "consumer report" and/or "consumer credit report" as those terms is defined by 15 U.S.C. § 1681a(d) and Cal. Civ. Code §1785.3(c), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

*Defendant's Compilation and Sale of Bankruptcy Information*

15. LCI regularly and in the course of its business obtains information regarding individuals who have filed for bankruptcy for the purpose of selling bankruptcy records to third parties who wish to determine whether a particular person has filed for bankruptcy.

16. LCI holds itself as having "the best and largest set of bankruptcy information available anywhere."[1]

17. Among LCI's products and services offered to third parties for a fee is its "Bankruptcy Notification Service" which purports to identify when a particular individual has filed for bankruptcy.[2]

18. LCI purported to "[e]nsure certainly with accurate matches using our proprietary algorithm[.]"[3]

19. Upon information and belief, LCI's algorithm compares publicly available information from bankruptcy court filings with the personal identification information of individuals provided by its customers.

20. When LCI determines through use of its standardized algorithm, that an individual has filed for bankruptcy, it provides its customer(s) with a report containing information relating to the bankruptcy it attributes to the individual.

21. The report is intended to convey to LCI's customer that the individual who is the subject of the report is the individual who filed the bankruptcy.

22. The data and reports LCI sells are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the public records data

---

[1] *See* https://www.lciinc.com/about-us/ (last visited Dec. 29, 2021).

[2] *See* https://www.lciinc.com/solutions/products/portfolio-monitoring/bankruptcy-notifications/ (last visited Dec. 29, 2021.

[3] *Id.*

included in each report bears on the credit history, credit worthiness, reputation, personal characteristics and mode of living of each respective consumer.

23. Such reports are "consumer reports" within the meaning of the FCRA and "consumer credit reports" within the meaning of the CCRAA.

24. LCI's algorithm regularly fails to use all of the personal identifying information publicly available on bankruptcy filings, including, exact first, middle, and last names, any generational suffix (e.g., Sr., Jr.), and addresses associated with the filer.

25. As a result, LCI regularly publishes to third parties reports that attribute a bankruptcy filing to a person who has not in fact filed for bankruptcy.

26. Such errors can be identified through reference to publicly available bankruptcy records and LCI's internal records of reports published to third parties.

27. LCI nevertheless unreasonably fails to account for this information which would prevent it from selling inaccurate bankruptcy records to its customers.

***Defendant Fails to Respond to Consumer Requests for Information***

28. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

29. In furtherance of that goal, the FCRA mandates that each CRA provide consumers with access to the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their credit files. *See* 15 U.S.C. §§ 1681g(a) and 1681i(a).

30. Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. *See* 15 U.S.C. § 1681g(a).

31. "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA " 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)).

32. After obtaining and reviewing a copy of their files, consumers have the right to dispute any inaccurate information in their credit files, and to have errors corrected by the CRA, usually within 30 days of their disputes. *See* 15 U.S.C. § 1681i(a).

33. Despite being regulated by the FCRA and CCRAA, LCI fails to comply with the important consumer-protection provisions of these statutes which require consumer reporting agencies to disclose to consumers all information compiled and maintained about them upon request.

34. Unlike the majority of consumer reporting agencies, LCI does not provide any information on its website for consumers who wish to make requests for information.

35. Furthermore, as a matter of common practice, LCI does not respond to consumer requests for information by providing a file disclosure as required by the FCRA and CCRAA.

***The Experience of Plaintiff William Norman Brooks, III***

36. Plaintiff, William Norman Brooks, III has never filed for bankruptcy.

37. Plaintiff has held various accounts with Bank of America, N.A. ("BofA") over the past ten years, including but not limited to a line of credit and a credit card.

38. On January 3, 2020, an individual named William E. Brooks filed for a Chapter 13 bankruptcy in Mobile, Alabama. *See* Case No. 20-10014 (Bkry. S.D. Ala.) at ECF 1 (herein, the "Alabama Bankruptcy").

39. The publicly available record of the Alabama Bankruptcy filing identifies one of the debtors as "William Eugene Brooks." *Id.*

40. Defendant, LCI, obtained a record of the Alabama Bankruptcy filing and matched it to Plaintiff William Norman Brooks, III using its proprietary matching algorithm.

41. Plaintiff has never lived in Alabama. Furthermore, his middle name is "Norman," and he consistently uses the generational suffix "III."

42. The public record of the Alabama bankruptcy that LCI attributed to Plaintiff plainly shows that the filer used the full middle name "Eugene."

43. Furthermore, the public record of the Alabama bankruptcy filing does not include any Bank of America accounts.

44. Pursuant to the terms of its regular business relationship with BofA, Defendant LCI nonetheless communicated to BofA a report attributing the Alabama Bankruptcy to Plaintiff.

45. The report communicated to BofA that Plaintiff was the individual who filed the Alabama Bankruptcy.

46. The report was false, because Plaintiff has never filed for bankruptcy.

47. Plaintiff received two letters from BofA dated January 6, 2020 and January 8, 2020.

48. Each letter advised him, among other things, that it had "received notification of a bankruptcy filing by or against [him]" and that it was "suspending [his] access to [his] funds from [his] line of credit" as of 01/06/2020.

49. As a result of LCI's inaccurate reporting of the bankruptcy, BofA cut off Plaintiff's access to his line of credit and credit card accounts.

50. Furthermore, LCI's inaccurate report attributing a bankruptcy to Plaintiff resulted in a substantial drop in Plaintiff's his credit score.

51. On March 16, 2020, Plaintiff was denied financing solely because of the inaccurate attribution of the Alabama Bankruptcy to Plaintiff.

52. On or about September 10, 2021, Plaintiff learned through separate litigation against BofA that LCI was the entity from which BofA "received notification of a bankruptcy filing" as stated in its letters.

53. LCI's website provides no online method by which a consumer can obtain a copy of his/her consumer report, nor does it provide information on how a consumer report can be obtained.

54. As the LCI website displays the logo of its parent company, Verisk Financial, Inc., more prominently than its own logo,[4] Plaintiff sent a letter to Verisk requesting a copy of his consumer file on September 16, 2021.

55. As of the date of this filing, Plaintiff did not receive his consumer file from Verisk.

56. On December 8, 2021, Plaintiff sent a request to LCI seeking disclosure of his file.

57. LCI did not provide any response to Plaintiff's request.

58. LCI repeatedly and continuously acted, and continues to act, in reckless or conscious disregard of Plaintiff's rights. LCI's actions, and its inaction, continue to cause great distress to Plaintiff. As a direct result of LCI's conduct, Plaintiff suffered anguish, embarrassment, anxiety, distress, feelings of hopelessness, and sleepless nights.

## <u>CLASS ACTION ALLEGATIONS</u>

59. Plaintiff brings this action on behalf of the following Classes:

---

[4] *Id.*

(a) **Nationwide inaccuracy class**: All persons residing in the United States and its Territories, beginning five (5) years prior to the filing of this Complaint and continuing through the resolution of the case, about whom Defendant sent a communication attributiting a record related to a bankruptcy for whom the personal identifying information available in the public record of the bankruptcy does not match the account holder's personal identifying information.

(b) **California inaccuracy subclass**: All persons residing in the State of California, beginning five (5) years prior to the filing of this Complaint and continuing through the resolution of the case, about whom Defendant sent a communication attributiting a record related to a bankruptcy for whom the personal identifying information available in the public record of the bankruptcy does not match the account holder's personal identifying information

(c) **Nationwide failure to disclose class**: All persons residing in the United States and its Territories, who, beginning five (5) years prior to the filing of this Complaint and continuing through the resolution of the case, made a request for information to Defendant and to whom Defendant did not provide all information in its files in response.

(d) **California failure to disclose subclass**: All persons residing in the State of California who, beginning five (5) years prior to the filing of this Complaint and continuing through the resolution of the case, made a request for information to Defendant and to whom Defendant did not provide all information in its files in response.

60. Plaintiff seeks certification of the above Classes pursuant to Rule 23(b)(2) and (3).

61. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the Classes number in the hundreds or thousands.

62. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Defendant's practices with respect to attributing bankruptcy records to individuals and selling such records to third parties, and disclosing information to consumers was in willful and/or negligent violation of the FCRA and/or CCRAA, and/or constituted an unlawful, unfair, or fraudulent business practices, by failing to follow reasonable procedure to assure the maximum possible accuracy of bankruptcy information, and disclosing such information to consumers upon request.

63. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

64. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are very experienced in handling consumer class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this claim.

65. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members

not parties to the adjudications or substantially impair or impede their ability to protect their interests.

66. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the CCRAA and/or UCL claims.

67. Whether Defendant violated the UCL and/or CCRAA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

68. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records and publicly available records.

**COUNT I**
**15 U.S.C. § 1681e(b)**

*Plaintiff Brooks Individually and on behalf of the Nationwide Inaccuracy Class*

69. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to follow reasonable procedure to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b) about Plaintiff and the Class by selling consumer reports attributing bankruptcy records to consumers when the public records of such bankruptcies contained identifying information which would have disqualified any match.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered

for Plaintiff and the Class against Defendant for statutory, actual and punitive damages for violation of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

## COUNT II
## 15 U.S.C. § 1681g

*Plaintiff Brooks Individually and on behalf of the Nationwide Disclosure Class*

71.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.  Pursuant to section 1681n and 1681o of the FCRA, Defendant is liable for willfully failing to provide consumers throughout the United States such as Plaintiff, upon request, with all information in the consumer's file in violation of 15 U.S.C. § 1681g.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681g, pursuant to 15 U.S.C. § 1681n; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n; and that the Court grant such other and further relief as may be just and proper.

## COUNT III
## Cal. Civ. Code § 1785.14(b)

*Plaintiff Brooks Individually and on behalf of the California Inaccuracy Subclass*

73.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.  Pursuant to Cal. Civ. Code § 1785.14(b), Defendant is liable for violating the CCRAA by failing to follow reasonable procedures to assure

"maximum possible accuracy" of the reports it sold, in violation of Cal. Civ. Code § 1785.14(b) with respect to Plaintiff Plaintiff and the Class by selling consumer reports attributing bankruptcy records to consumers when the public records of such bankruptcies contained identifying information which would have disqualified any match.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages of $100 to $5,000 per Class member per violation under the CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual damages under the CCRAA; that judgment be entered for Plaintiff and the Class against Defendant for actual damages under the CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such other and further relief as may be necessary, just and proper.

**COUNT IV**

**Cal. Civ. Code § 1785.10, 1785.15**

*Plaintiff Brooks Individually and on behalf of the Claifornia Inaccuracy Subclass*

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. Pursuant to CAL. CIV. CODE § 1785.31, Defendant is liable for violating the CCRAA by failing to provide California consumers, upon request, with a copy of their disclosure containing all information on that consumer in violation of CAL. CIV. CODE §§ 1785.10 and 1785.15 with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages of $100 to $5,000 per Class member per violation under the CCRAA; that the Court award injunctive relief under the CCRAA; that the Court award costs and reasonable attorney's fees under the CCRAA; and such other and further relief as may be necessary, just and proper.

## COUNT V
## Defamation

*Plaintiff Brooks Individually and on behalf of the Nationwide Inaccuracy Class and California Inaccuracy Subclass, in the alternative to Counts I and III*

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. In communicating to BofA and/or its other customers that bankruptcy proceedings pertained to Plaintiff and Class members, LCI expressed purportedly factual statements about Plaintiff and Class members, indicating that Plaintiff and Class members had filed for bankruptcy.

79. LCI intentionally communicated these statements about Plaintiff and Class members to its customers pursuant to its standardized policies and procedures, including but not limited to its proprietary algorithm.

80. On information and belief, LCI's customers, including but not limited to BofA, understood these statements to refer to Plaintiff and Class members, and specifically to mean that Plaintiff and Class members had filed for bankruptcy.

81. The communications LCI provided to its customers about Plaintiff and Class members were false. As shown by the publicly available personal identifying

information of the bankruptcy records, Plaintiff and Class members had different personal identifiers than those of the individual who actually filed for bankruptcy.

82. LCI made the above-described defamatory statements with actual malice – *i.e.*, with a reckless disregard for their falsity.

83. LCI made these statements without privilege or justification.

84. The above-described statements concerning Plaintiff and Class members directed injury Plaintiff and Class members by diminishing their credit reputations and credit standing, and/or directly causing them to be denied credit opportunities.

85. The above-described statements convey a defamatory meaning, as the attribution of a bankruptcy filing suggests that the consumer is unwilling and/or unable to meet his or her credit obligations.

86. It was LCI's expectation and intent that its customers would deny Plaintiff and Class members credit opportunities based upon its representations that they had filed for bankruptcy.

87. As a result of LCI's false and defamatory statements, Plaintiff and Class members suffered damages including but not limited to harm to reputation, loss of credit opportunities, time spent to resolve the problem, and/or emotional distress.

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for damages; and such other and further relief as may be necessary, just and proper.

## COUNT VI
## Cal. Bus & Prof. Code § 17200

*Plaintiff Brooks Individually and on behalf of the Nationwide Disclosure Class and Claifornia Inaccuracy Subclass,*
*in the alternative to Counts II and IV*

88. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

89. Defendant was required to adhere to the requirements of the California Unfair Competition Law (UCL).

90. Defendant's inaccurate reporting and inaccurate disclosures constituted unlawful, unfair and fraudulent business practices.

91. Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to match them to records of bankruptcy based on insufficient criteria which ignores publicly available personal identifiers that would disqualify a match, and to disseminate inaccurate bankruptcy information to third parties, and to withhold this information from consumers who request it.

92. The harm caused by these business practices vastly outweighs any legitimate utility they possibly could have.

93. Because Plaintiff and the Class will seek credit in the future, there is a real and immediate threat that Plaintiff will suffer the same injury in the future.

94. Plaintiff and the Class are entitled to injunctive relief, restitution of their account funds and credit privileges, and to the recovery of attorneys' fees and costs.

## JURY TRIAL DEMAND

95. Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF:

**WHEREFORE**, the Plaintiff seeks relief as follows:

A. An order certifying the Classes pursuant to Fed. R. Civ. P. 23;

B. An award of damages for denial of a loan pursuant to 15 U.S.C. §1681n(a)(1)(A), §1681o(a)(1), Cal. Civ. Code §§ 1785.31(a)(1) and 1785.31(a)(2)(A);

C. An award of actual damages for mental anguish, emotional distress, inconvenience, frustration, embarrassment, and despair, or as the jury may allow at trial, pursuant to 15 U.S.C. §§1681n(a)(1)(A) and 1681o(a)(1), and CAL. CIV. CODE §§ 1785.31(a)(1) and 1785.31(a)(2)(A);

D. An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1)(A), 15 U.S.C. §1681n(a)(2), and CAL. CIV. CODE §1785.25(a) and §1785.31(a)(2)(B);

E. Restitution of all funds suspended and the value of credit privileges revoked or terminated;

F. Injunctive relief ordering LCI to rectify the credit reporting errors and change its procedures for attributing bankruptcy information;

G. An award for reasonable attorneys' fees and costs to maintain the instant action pursuant to 15 U.S.C. §§1681n and 1681o, and CAL. CIV. CODE §§1785.31; and

H. Any other equitable relief deemed appropriate.

Dated this 29th day of June, 2022.

*/s/ Tammy Hussin*
Tammy Hussin, Esq.
HUSSIN LAW FIRM

*/s/ James A. Francis*
James A. Francis, Esq.*
FRANCIS MAILMAN
SOUMILAS, PC

/s/ Lauren KW Brennan
Lauren KW Brennan.*
FRANCIS MAILMAN SOUMILAS, PC

*Pro Hac Vice

**Attorneys for Plaintiff**
**WILLIAM NORMAN BROOKS, III**